IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MICHAEL J. SWARTZ,<br>    Plaintiff, | )<br>)<br>) |
| vs | ) Civil Action No. 09-946<br>) |
| WINDSTREAM COMMUNICATIONS, INC.,<br>    Defendant. | )<br>) |

MEMORANDUM OPINION AND ORDER

MITCHELL, Magistrate Judge:

      Presently before the Court are the plaintiff's motion for partial summary judgment on Count I of the complaint (Document No. 24) and the defendant's motion for summary judgment on all counts of the complaint (Document No. 21). For reasons discussed below, the plaintiff's motion for partial summary judgment will be denied, and the defendant's motion for summary judgment will be granted.

      The plaintiff, Michael J. Swartz, has filed a three-count complaint against his former employer, defendant Windstream Communications, Inc. ("Windstream"). The plaintiff alleges that Windstream willfully violated the Fair Labor Standards Act, 29 U.S.C. § 201, et seq. ("FLSA"), by failing to pay him overtime wages for all hours worked in excess of forty hours per week (Count I). He also complains that Windstream terminated his employment because of his age in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621, et seq. ("ADEA") (Count II), and the Pennsylvania Human Relations Act, as amended, 43 P.S. § 951, et

seq. ("PHRA") (Count III). The Court's federal question and supplemental jurisdiction are invoked.

Defendant Windstream is a telecommunications company, with its affiliates providing services in approximately 20 states. (Defendant's Concise Statement of Material Facts ("CSMF") at ¶ 2 and plaintiff's response thereto). From July 17, 2006 until June 20, 2008, the plaintiff was employed by Windstream as a Sales Engineer II; the plaintiff was employed in that same capacity with Windstream's corporate predecessor from 1999 to July 16, 2006. (Id. at ¶ 4).

As a Sales Engineer, II, the plaintiff did not have a college degree, but he obtained a high school diploma. (Plaintiff's Concise Statement of Material Facts ("CSMF") at ¶ 3 and defendant's response thereto). The plaintiff's primary duty as a Sales Engineer II was to design communication platforms for Windstream's customers to meet their specific needs. (Defendant's CSMF at ¶ 8 and plaintiff's response thereto).

In 2008, Windstream underwent a reorganization in its business sales channel, which resulted in the elimination of the plaintiff's position (Id. at ¶¶ 32, 42); at that time, the plaintiff was 61 years of age. (Id. at ¶ 3). Windstream argues that age was not a factor in its decision to eliminate the plaintiff's position. Rather, it asserts it conducted a merit review of engineers in the plaintiff's region and chose to eliminate his job due to his lack of a Nortel certification and his unwillingness to obtain it. (Defendant's CSMF at ¶¶ 39, 41, 47). Windstream also avers that the plaintiff's job was eliminated due to an insufficient volume of work for voice services in his region. (Id. at ¶ 42).

Conversely, the plaintiff insists he was discharged because of his age; that Windstream's reasons for discharging him are a pretext for age discrimination; and that it

2

eliminated his position while retaining younger employees having the same job duties. As to his FLSA claim, the plaintiff contends that during his employment with Windstream, he worked a considerable amount of hours that required overtime pay, but he never received compensation for such overtime work.

The plaintiff has moved for partial summary judgment on his FLSA claim in Count I. Defendant Windsteam has moved for summary judgment on all of the plaintiff's claims. Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).

Parties' cross-motions for summary judgment on the FLSA claim:

Under the FLSA, an employee who works more than 40 hours per week is entitled to overtime pay unless he falls within one of the FLSA's exemptions. 29 U.S.C. §§ 207, 213. In their cross-motions for summary judgment on the FLSA claim, the plaintiff argues that he was not exempt from the FLSA requirement that his employer pay him overtime compensation. In contrast, the defendant believes the plaintiff was exempt from overtime pay under the FLSA's "administrative employee" exemption.

Under the administrative employee exemption, "any employee employed in a bona fide executive, administrative or professional capacity" is exempt from the FLSA's overtime requirements. 29 U.S.C. § 213(a)(1). Regulations promulgated by the Secretary of Labor define an administrative employee as someone who is:

> (1) Compensated on a salary or fee basis at a rate of not less than $455 per week... exclusive of board, lodging or other facilities;
>
> (2) Whose primary duty is the performance of office or non-

> manual work directly related to the management or general business operations of the employer or the employer's customers; and
>
> (3) Whose primary duty includes the exercise of discretion and independent judgment with respect to matters of significance.

29 C.F.R. § 541.200.

The Third Circuit Court of Appeals has stated that "[t]he FLSA is remedial and is construed broadly, but exemptions to it are construed narrowly, i.e., against the employer." Smith v. Johnson and Johnson, 593 F.3d 280, 284 (3d Cir. 2010). Here, the plaintiff meets all the criteria to fall within the administrative employee exemption; hence, he is not entitled to overtime compensation in excess of 40 hours per week.

In reviewing the criteria set forth above, it is not disputed that the plaintiff was compensated in excess of $455 per week; indeed, he was paid on a bi-weekly basis, and from 2006 to 2008, he was paid the following annual sums: $69,519.17 in 2006, $71,609.77 in 2007, and $73,931.94 in 2008 (Defendant's CSMF at ¶¶ 6-7 and plaintiff's response thereto). Thus, the plaintiff satisfies the first factor of an administrative employee.

To comport with the second factor, an employee's primary duty must be performing office or non-manual work directly related to the employer's management or general business operations. 29 C.F.R. § 541.201(a). An employee's "primary duty" is the "principal, main, major or most important duty that the employee performs... based on all the facts in a particular case, with the major emphasis on the character of the employee's job as a whole." 29 C.F.R. § 541.700(a). To qualify for an administrative exemption then, an employee's primary duty must involve "work directly related to assisting with the running or servicing of the business, as distinguished, for example, from working on a manufacturing production line or

4

selling a product in a retail or service establishment." 29 C.F.R. § 541.201(a).

The plaintiff testified that as a Sales Engineer II, his duties were to design and prepare price quotes for the sales force. (Plaintiff's deposition at p. 24). Specifically, the plaintiff explained:

> The sales consultant or the inside salesperson would engage
> the customer and determine ... what type of needs that they
> had within their business relating to [a] telephone system...
> [T]hat information ... was brought back to the sales engineers...
> to design a communication platform/data application for that
> particular customer... So we would design all that. Prepare the
> quote and present that back to the salesperson to take to the end
> customer to try to make the sale. (Id. at pp. 24-25).

To prepare the design/configuration of a customer's telecommunication system, a Sales Engineer II utilized Windstream's computer system. (Plaintiff's CSMF at ¶ 7 and defendant's response thereto). That is, based on information provided by a salesperson, a computer program of an equipment manufacturer chosen for the system provided a parts list for the Sales Engineer II. (Id. at ¶ 8). After obtaining the parts list, a Sales Engineer II would input the data back into the computer to obtain pricing from another computer program. (Id. at ¶ 9). The pricing program then provided a Sales Engineer II with a price quote for a customer's requested telecommunications program. (Id. at ¶ 10).

Occasionally, a Sales Engineer II would go with a salesperson on a sales call. (Deposition of Anthony Parfitt, Sr. at p. 11). In addition, their duties could entail assisting a salesperson in making customer visits, uncovering applications, helping design final proposals and presenting price quotes to customers. (Id. at pp. 10-11, 14).

Clearly, in performing his duties as a Sales Engineer II, the plaintiff engaged in non-manual office work. (Defendant's CSMF at ¶ 15 and plaintiff's response thereto). It also

appears that he performed work directly related to Windstream's general business operations.

For instance, as set forth in the 2007 "Accountabilities" section of the plaintiff's performance review, the record shows that in performing his duties, the plaintiff actively participated with sales people and customers weekly and sometimes more frequently; he sought to understand the customer's requirements to ensure that the right solution was proposed at the best possible price to the customer; he accompanied sales staff on at least 30 on-site proposals in the year and was engaged on conference calls at least twice a week with sales teams and customers; he provided project management on major installations and also assisted on smaller projects; and he put together presentations for customers. (Defendant's Exhibit 9 at pp. 4-6). Based on these facts, the plaintiff satisfies the second factor of an administrative employee, as he performed work directly related to assisting with the servicing of Windstream's business.

The third factor in our analysis demands that in performing his primary duty, an employee exercises discretion and independent judgment concerning matters of significance. "The exercise of discretion and independent judgment implies that the employee has authority to make an independent choice, free from immediate direction or supervision." 29 C.F.R. § 541.202(c). "'[M]atters of significance' refers to the level of importance or consequence of the work performed." 29 C.F.R. § 541.202(a).

Generally, "the exercise of discretion and independent judgment involves the comparison and the evaluation of possible courses of conduct, and acting or making a decision after the various possibilities have been considered." Id. An employee can be deemed to exercise discretion and independent judgment even if his decision or recommendation is reviewed at a higher level. 29 C.F.R. § 541.202(c).

Certain jobs do not involve the exercise of discretion and independent judgment. Specifically, regulations provide that "[t]he exercise of discretion and independent judgment... does not include clerical or secretarial work, recording or tabulating data, or performing other mechanical, repetitive, recurrent or routine work. An employee who simply tabulates data is not exempt, even if labeled as a 'statistician.'" 29 C.F.R. § 541.202(e).

Here, in performing his duties as a Sales Engineer II, the plaintiff did not simply tabulate data or perform mechanical, repetitive work. Rather, he exercised discretion and independent judgment in designing communication platforms and data applications to meet a customer's specific needs. (Deposition of Anthony Parfitt, Sr. at p. 118; Deposition of Richard Kutch at pp. 42-45). Indeed, to design a telecommunication system, a sales engineer like the plaintiff had to consider various alternatives to provide the best solution for a customer (Deposition of Richard Kutch at p. 43). He "had a complete product portfolio line that he could look at" in determining the best design to present to a customer. (Deposition of Anthony Parfitt, Sr. at 118). Importantly, he did not have immediate supervision in designing and providing the best solution for a customer. (Deposition of Richard Kutch at pp. 43-44). Further, his design of the system directly impacted how much it would cost Windstream to sell the product to the customer. (Id. at p. 44).

To determine if an employee exercises "discretion and independent judgment" in the course of his employment, we consider several factors, such as:

> whether the employee has authority to formulate, affect, interpret, or implement management policies or operating practices; whether the employee carries out major assignments in conducting the operations of the business; whether the employee performs work that affects business operations to a substantial degree... whether the employee has authority to

7

> commit the employer in matters that have significant financial impact; whether the employee has authority to waive or deviate from established policies and procedures without prior approval; whether the employee has authority to negotiate and bind the company on significant matters; whether the employee provides consultation or expert advice to management; whether the employee is involved in planning long-or short- term business objectives; whether the employee investigates and resolves matters of significance on behalf of management; and whether the employee represents the company in handling complaints, arbitrating disputes or resolving grievances.

29 C.F.R. § 541.202(b).

With respect to these factors, "courts generally find that employees who meet at least two or three of these factors are exercising discretion and independent judgment, although a case-by-case analysis is required." 69 Fed. Reg. 22122, 22143 (Aug. 23, 2004) (citing cases). Other factors are also deemed relevant in determining if an employee exercises discretion and independent judgment, including: "responsibility for assessing customer needs". Id. at 22144.

Here, in performing his duties as a Sales Engineer II, the plaintiff satisfied several of the above factors. Based on the 2007 "Accountabilities" section of the plaintiff's performance review, and the aforesaid discussion of his duties, it appears that he implemented management policies or operating practices, performed work that affected business operations to a substantial degree, and participated with the sales staff in assessing customer needs.

We agree with the plaintiff that as a Sales Engineer II, he did not manage any employees (Plaintiff's CSMF at ¶ 4 and response thereto), had no discretion to set the price of equipment or labor (Id. at ¶ 12), had no authority to negotiate with customers (Id. at ¶ 13), and if a salesperson obtained an order, he did not install the telecommunications system, as Windstream technicians installed it. (Id. at ¶¶ 16-17).

Nonetheless, as recited above, in designing communication platforms and data applications to meet a customer's needs, the plaintiff exercised discretion and independent judgment in matters of significance. Therefore, having found that the plaintiff was subject to the administrative employee exemption, Windstream is entitled to summary judgment on Count I.

<u>Defendant's motion for summary judgment on the ADEA & PHRA claims:</u>

In support of its motion on Counts II and III, Windstream asserts that it eliminated the plaintiff's position as a result of its 2008 corporate reorganization, not because of his age. It argues it had a legitimate non-discriminatory business reason for eliminating the plaintiff's position, and further, he cannot prove age was the reason for his discharge. As discussed below, summary judgment is appropriate on the plaintiff's age discrimination claims.

The record shows that in 2008, the plaintiff worked in Windstream's Northeast Region, which was overseen by its Area Vice President, Kenneth Elliott; the Northeast Region consisted of New York, Pennsylvania, Ohio and Kentucky. (Defendant's CSMF at ¶ 29 and plaintiff's response thereto). In 2008, a reorganization in Windstream's business sales channel occurred, resulting in positions being consolidated from eight offices to four offices. (Id. at ¶¶ 32-33). The goal of the reorganization was to realign business processes, consolidate functions, provide better customer support and to operate more efficiently. (Id. at ¶ 34).

The reorganization impacted the entire sales operation, including sales supervisors, sales assistants, and sales engineers. (Id. at ¶ 43). In fact, other sales engineers were eliminated company wide in different geographic regions. (Id. at ¶ 53). Due to the consolidation in the Northeast Region, the Hudson, Ohio, Pennsylvania and New York locations were impacted. (Id. at ¶ 37).

Kenneth Elliott made recommendations concerning the employees to be impacted by the reorganization. (Id. at ¶ 38). In making his recommendations, Mr. Elliott used merit review in assessing the engineers. (Defendant's CSMF at ¶ 39).

Windstream avers that after conducting his merit review, Mr. Elliott opted to eliminate the plaintiff's position due to his lack of a Nortel certification and his unwillingness to obtain it. (Id. at ¶ 41). It also asserts it eliminated the plaintiff's position, because his primary expertise was in voice applications, and the volume of work for voice services in its Ohio, Pennsylvania and New York area was insufficient to support his position. (Id. at ¶¶ 23, 42).

In response to Windstream's motion, the plaintiff asserts he was discharged because of his age. He also believes Windstream's reasons for discharging him are a pretext for discrimination.

The ADEA prohibits an employer from discharging any individual or otherwise discriminating against any individual "*because of* such individual's age." 29 U.S.C. § 623(a)(1) (emphasis added). In relevant part, the PHRA also prohibits an employer from discharging an individual because of age. 43 P.S. § 955(a).

The United States Supreme Court has stated that "the ordinary meaning of the ADEA's requirement that an employer took adverse action 'because of' age is that age was the 'reason' that the employer decided to act." Gross v. FBL Financial Services., Inc., 129 S.Ct. 2343, 2350 (2009), citing Hazen Paper Co. v. Biggins, 507 U.S. 604, 610 (1993). In Gross, the Court stated that "the ADEA's text does not provide that a plaintiff may establish discrimination by showing that age was simply a motivating factor". 129 S.Ct. at 2349. Rather, to establish a claim under the ADEA, "a plaintiff must prove that age was the 'but-for' cause of the employer's

adverse decision." Id. at 2350.

Significantly, in Gross, the Court found it was improper to shift the burden of persuasion to a defendant in an ADEA case, stating: "the burden of persuasion necessary to establish employer liability is the same in alleged mixed-motive cases as in any other ADEA disparate treatment action. A plaintiff must prove by a preponderance of the evidence (which may be direct or circumstantial), that age was the 'but-for' cause of the challenged employer decision." Id. at 2351. The Court instructed that "[t]he burden of persuasion does not shift to the employer to show that it would have taken the action regardless of age, even when a plaintiff has produced some evidence that age was one motivating factor in the decision." Id. at 2352. In so holding, the Court noted it had not definitively decided whether the evidentiary framework of McDonnell-Douglas v. Green, 411 U.S. 792 (1973), was appropriate in ADEA cases. Gross, 129 S.Ct. at 2349, n.2.[1]

Following the Supreme Court's opinion in Gross, the Third Circuit Court of Appeals addressed whether Gross rendered the aforesaid McDonnell-Douglas analysis inapplicable to ADEA cases. In Smith v. City of Allentown, 589 F.3d 684, 691 (3d Cir. 2009), the Court opined: "While we recognize that Gross expressed significant doubt about any burden-shifting under the ADEA, we conclude that the but-for causation standard required by Gross does not conflict with our continued application of the McDonnell-Douglas paradigm in age

---

1. Under the McDonnell-Douglas framework, "an employee must first establish a prima facie case of discrimination, after which the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for its adverse employment decision. If the employer articulates one or more such reasons, the aggrieved employee must then proffer evidence that is sufficient to allow a reasonable finder of fact to find by a preponderance of the evidence that the employer's proffered reasons are false or pretextual." Fasold v. Justice, 409 F.3d 178, 184 (3d Cir. 2005).

discrimination cases." The Court in Smith explained:

> Gross stands for the proposition that it is improper to shift the burden of persuasion to the defendant in an age discrimination case. McDonnell-Douglas, however, imposes no shift in that particular burden... Throughout [the McDonnell-Douglas] burden-shifting exercise, the burden of persuasion, including the burden of proving 'but for' causation ... remains on the employee. Hence, Gross, which prohibits shifting the burden of persuasion to an ADEA defendant, does not forbid our adherence to precedent applying McDonnell-Douglas to age discrimination claims...

Id. (citations omitted).

Here, the plaintiff has not presented direct evidence of age discrimination. Thus, we will evaluate his ADEA and PHRA claims under the framework articulated in McDonnell Douglas for cases involving indirect evidence of discrimination.[2]

Under the McDonnell-Douglas standard, the plaintiff has the initial burden of establishing a prima facie case of discrimination. To establish a prima facie of age discrimination in a reduction-in-force case, as here, the plaintiff must show: (1) he was 40 years of age or older; (2) he was qualified for the position which he held; (3) he suffered an adverse employment action; and (4) his employer retained someone similarly situated to him who was sufficiently younger. Anderson v. Consolidated Rail Corp., 297 F.3d 242, 249-50 (3d Cir. 2002).

It does not appear that the plaintiff can prove the fourth prong of his prima facie case. That is, when Kenneth Elliott analyzed sales engineers to be impacted by the reorganization, he made a choice between three "voice" engineers; i.e., those having a job

---

2. The Third Circuit Court of Appeals has noted that "[t]he same legal standard applies to both the ADEA and the PHRA and therefore it is proper to address them collectively." Milby v. Greater Philadelphia Health Action, 339 Fed.Appx. 190, 191 n.3 (3d Cir. 2009), quoting Kautz v. Met-Pro Corp., 412 F.3d 463, 466 n.1 (3d Cir. 2005).

functionality or specialty in "voice" applications, rather than in "data" applications. (Deposition of Kenneth Elliott at pp. 38-39, 47). He did so because the amount of engineers for voice services that Windstream had in its Ohio, Pennsylvania and New York area, and the volume of work there was not sufficient to support the position. (Id. at p. 36).

The three "voice" engineers that Mr. Elliott considered for elimination were the plaintiff (who was 61 years of age), Dick Kutch (who was 59), and Wes Kapusinski (who was 53). (Defendant's CSMF at ¶ 45). In comparing their ages, retained employees Mr. Kutch and Mr. Kapusinski were not "sufficiently younger" than the plaintiff. See, Narin v. Lower Merion Sch. Dist., 206 F.3d 323, 333 n.9 (3d Cir. 2000) (opining that the 56 year old plaintiff failed to establish a prima facie case, as the age of hired employees -- ages 49 and 54 -- "d[id] not differ materially from [her's]" and were not sufficiently younger to permit an inference of discrimination); also see, Bernard v. Bethenergy Mines, Inc., 837 F.Supp. 714, 716 (W.D.Pa. 1993) (finding that hirees aged 47 and 50 were not sufficiently younger than the 54 year old plaintiff), aff'd., 31 F.3d 1170 (3d Cir. 1994) [Table]. Here, since the retained, similarly-situated employees to the plaintiff, Mssrs. Kutch and Kapusinski, were not sufficiently younger, the plaintiff has not established a prima facie case of discrimination.

Even assuming, arguendo, that the plaintiff did establish his prima facie case, the defendant has sustained its burden of production by presenting a legitimate, non-discriminatory reason for terminating the plaintiff's employment. As previously discussed, Windstream asserts that in the course of its reorganization, it conducted a merit review of engineers in the plaintiff's region and chose to eliminate his job due to his lack of a Nortel certification and his unwillingness to obtain it. It also avers that it eliminated his job due to an

insufficient volume of work for voice services in his region.

At this juncture, it is incumbent upon the plaintiff to satisfy his ultimate burden of persuasion by producing evidence that the defendant's articulated reason for its adverse employment action was pretextual. The plaintiff may meet this burden in one of two ways: by introducing evidence

> from which a factfinder could reasonably either
> (1) disbelieve the employer's articulated legitimate
> reasons; or (2) believe that an invidious discriminatory
> reason was more likely than not a motivating or
> determinative cause of the employer's action.

Fuentes v. Perskie, 32 F.3d 759, 764 (3d Cir. 1994).

To show that his discharge was a pretext for age discrimination, the plaintiff makes two arguments. First, he asserts that Windstream's use of the criteria "voice" engineer and "data" engineer to eliminate his position was discriminatory in its effect, because older employees had more experience in voice applications. He also asserts that the use of the criteria was highly questionable, as Windstream was in the process of eliminating the distinction between voice and data applications and sought to have all engineers become capable of handling both applications equally.

Windstream admits there was no formal title distinction between a voice engineer or a data engineer in its organization; however, there was a distinction between a voice engineer and a data engineer based one's job functionality and job assignments. (Defendant's CSMF at ¶ 21 and plaintiff's response thereto). For instance, a voice engineer dealt with traditional telecommunications equipment that would be analog or digital in nature. (Id. at ¶ 22). The plaintiff admits he had more experience and expertise in voice applications. (Id. at ¶ 23)

Richard Kutch, a co-worker of the plaintiff, suggested that Windstream's newer employees may have had more expertise in data applications, while its older employees had more experience in voice applications. (Deposition of Richard Kutch at p. 38). However, most of Windstream's sales engineers who were <u>not</u> voice engineers in the Pennsylvania, Ohio, and New York offices under Kenneth Elliott and Anthony Parfitt were aged 50 or over; specifically, as of April 30, 2008, Robert Snyder, a Sales Engineer II was 51 years old, John Sturgis, a Sales Engineer II was 51 years old, Ed Walukonis, a Sales Engineer III was 56 years old, and Lynette Baughman, a Sales Engineer III was 38 years old. (Defendant's CSMF at ¶ 54 and plaintiff's response thereto). Unfortunately for the plaintiff, due to Windstream's reorganization, the amount of engineers for voice services in its Ohio, Pennsylvania and New York area and the volume of work there was not sufficient to support all voice engineers. (Deposition of Kenneth Elliott at p. 36).

As for Windstream's Kentucky office (which was also part of its Northeast Region), no sales engineering positions were available there at the time of the reorganization. (Defendant's CSMF at ¶ 46 and plaintiff's response thereto). Further, all voice engineers in the Kentucky office were Nortel certified, which the plaintiff was not. (Id. at ¶ 47).

In further attempting to show pretext, the plaintiff asserts that the reason he lacked Nortel certification was because his supervisor, Anthony Parfitt, failed to pay the license fee for the software program he needed to obtain the certificate. Importantly, the record shows that the course provided on the software program at issue was not necessary to move to the next step of the Nortel certification process; rather, it was an optional prerequisite. (Deposition of Richard Kutch at pp. 22, 38-41). Even so, the plaintiff had access to all the information on the

15

software program, just not a self assessment test, which was not needed for certification. (Id. at pp. 30-31, 38-41). Thus, despite having access to the software program at issue, the plaintiff failed to obtain his Nortel certification.

Based on these facts, the plaintiff has not proffered evidence of pretext. Therefore, since no genuine issue of material fact is in dispute, and for reasons discussed above, Windstream's motion for summary judgment on Counts II and III will be granted.

An appropriate Order will be entered.

O  R  D  E  R

AND NOW, this 8th day of July, 2010, for the reasons set forth in the Court's Memorandum Opinion entered this date,

IT IS ORDERED that the plaintiff's motion for partial summary judgment on Count I of the complaint (Document No. 24) is denied, and that the defendant's motion for summary judgment on all counts of the complaint (Document No. 21) is granted.

                                                s/ ROBERT C. MITCHELL
                                                United States Magistrate Judge